Hart, J.
Although both actions were tried together to the same jury and the record is a combination of records of both actions, because of differences in the issues involved and because of the nature of the claimed errors in the trial, this court must necessarily separately review parts of the record as they relate to each action.
In the petitions in both the survival and wrongful death actions, the plaintiff alleges negligence of the defendant, and at the trial such negligence was admitted by the defendant. In the survival action, the petition alleges that Lopresti “sustained an inguinal hernia on the left side, and a strain and sprain of the spine * * * and also sustained internal injuries which produced a traumatic malignancy in the thoracic and lumbar region. ’ ’
The answer of the defendant to such petition admits “that as a result of the collision plaintiff sustained personal injuries, but denies that said injuries were of the kind or extent alleged in plaintiff’s petition.”
In its special combined verdict, the jury found as facts that “Lopresti was forcibly thrown against the steering wheel of his car bending and damaging the same”; that he “sustained a left inguinal hernia and internal abdominal injuries as a direct result of said collision”; and that the “injuries and trauma so sustained by * * # Lopresti activated a carcinoma of the head of his pancreas and proximatély shortened his life and accelerated his death.”
At the close of all the evidence, the defendant made a motion for a directed verdict in the wrongful death action, which motion was overruled. No such motion was made in the survival action. As to such action the principal assignments of error are insufficiency of the evidence, excessive damages, error in the general charge of the court, refusal of the court to charge as requested by the defendant at the conclusion of all *484 the evidence, and error in the admission in evidence of certain exhibits offered by the plaintiff.
The jury found that Lopresti sustained multiple personal injuries as a result of the collision, and we are of the opinion that this finding, as it relates to the survival action, is fully supported by the evidence.
On the other hand, this court is of the opinion that there is no substantial evidence in the record to support the verdict in favor of the plaintiff in relation to the wrongful death action. There was no proof whatever that the injuries suffered by the decedent caused his cancer. In order to warrant a recovery in that action, it was necessary for the plaintiff to prove that the injuries activated the decedent’s cancer to the extent that it accelerated his death by some appreciable period of time.
Section 10509-167, General Code (Section 2125.02, Revised Code), limits recovery in a wrongful death action to such damages as. the jury may find proportioned to the pecuniary injuries resulting from such death to the person or persons for whose benefit the action is brought. Karr, Admr., v. Sixt, 146 Ohio St., 527, 534, 67 N. E. (2d), 331, paragraph six of the syllabus. The basis of recovery in such a case must be predicated upon the loss which the beneficiary suffers by reason of the decedent’s wrongful death, the damages must be measured by the monetary value of the period of time his life was shortened by reason of the injury, and the evidence must show that such period was a reasonably appreciable one.
The crucial question in the instant case is whether there is any evidence to sustain the finding of the jury in this respect. This is a highly technical and scientific problem and must be resolved in this case upon the testimony of three physicians and surgeons called as witnesses in-the case, one for the plaintiff and two for the defendant.
*485 Dr. Gaspari, called as a witness by the plaintiff, testified in substance that on July 13, 1949, he assisted in an abdominal exploratory operation on Lopresti and found a bulging hemorrhagic mass which he diagnosed as a malignancy, but a pathological examination did not confirm the malignancy; that no further operation seemed advisable as it was apparent that the patient was fatally ill; that he died on September 8, 1949; that an autopsy showed cancer of the head of the pancreas as the cause of death; and that as to whether the injury shortened Lopresti’s life the doctor thought “that the trauma aggravated this man’s condition.” He testified further that he believed the “injury played some part in this, but the amount it played, I cannot say * * * I wouldn’t know that.” He testified that the primary cause of death was cancer of the pancreas. When asked whether Lopresti had an existing malignancy at the time of his accident, he answered, “I would say that he had it * * * I think he had it for some time * * * I don’t know the cause of cancer * * * I don’t know anyone that knows the cause of cancer.” Upon further inquiry whether it takes an accident to make malignancy cells active he answered, “no it doesn’t take an accident * * * it may be anything * * * we don’t know.”
Dr. Gaspari signed the death certificate at the time of Lopresti’s death and stated that the “disease or condition directly leading to death” was “undifferentiated carcinoma of head of pancreas.” An inquiry on the death certificate as to injury or accident was left unanswered.
Dr. W. W. Beck, called by the defendant, in answer to hypothetical questions, said:
“A. * * * there is no causal relation between any of the physical trauma received and the adenoma carcinoma of the head of the pancreas.
*486 “Q. Do you know wliat causes cancer? A. No, no one does.
í t * # *
“A. My opinion would be that there would be no relation between the trauma received and the cancer, or any activating or aggravating the cancer of the pancreas.
it* * *
“Q. Well, in your experience with treatment and handling of pancreatic cancers, have you ever known of one where trauma, or injury, either caused or accelerated the growth of the pancreatic cancer? .* * * A. I have never known a case.
í t * * *
“Q. You don’t think trauma has anything to do with cancer? A. No, I don’t think so. 1 believe the best authorities agree with that.”
Dr. Howard Holmes, also called by the defendant, in answer to hypothetical questions, said:
“A. Cancer of the pancreas, as I previously stated, the time of its start, its cause no one knows. Certainly with the facts cited here, I can see no relationship whatsoever to the automobile accident he had with the ultimate finding of cancer of the pancreas.
tí***
“A. * * * in all the years, we have never seen cancer of the pancreas develop following trauma.
í Í * * *
“A. * * * I have never seen or heard, or ever read of any instance where trauma activated a cancer.
tí* * *
“A. My opinion is that the accident had nothing to do with acceleration, or agitation of the cancer of the pancreas.
it* * *
“Q. Now, Doctor, you recognize trauma as a factor in the growth of cancer? A. No, sir.”
*487 Taking this medical testimony as bearing on the wrongful death action in a light most favorable to the plaintiff, this court finds that there is no substantial evidence that the injury to the decedent shortened his life for any appreciable period of time. As to this action, the trial court should have directed a verdict for the defendant.
During the trial of the case, the defendant objected to the admission in evidence of certain exhibits offered by the plaintiff and which related to medical and hospital expenses incurred by Lopresti, on the claimed ground that some of them at least were not incurred as a result of injuries to Lopresti in the collision but were due to his cancerous condition independent of the injuries from the collision.
The difficulty here encountered was largely due to the confusion which generally arises in the attempt to try two such actions in one trial. The writer of this opinion had occasion to suggest these difficulties in the opinion in the case of Fielder, Admr., v. Ohio Edison Co., 158 Ohio St., 375, 380 to 387, 109 N. E. (2d), 855. In that case this court held that the two actions were not properly joinable under the Ohio statute. The consolidation of the two actions in the present litigation was had upon the motion of the defendant, and it is not now in a position to claim error because of the joinder itself.
Fifteen such separate exhibits, numbered from 1 to 15, inclusive, and covering various phases of such medical and hospital expense, were offered by the plaintiff at the close of his evidence. No objections were made by the defendant to exhibits 1, 3, 4, 5 and 7, but objections were made to exhibits 2, 8 and 9, because they included expense items incurred in the hernia operation, and to exhibits 6, 9, 10, 11, 12, 13, 14 and 15, because they had to do with services rendered by a hospital or physician on account of de *488 cedent’s cancerous condition which the defendant claimed had no connection with the accident on December 6,1948. The objections to the admission of the exhibits were overruled. Like objections, in the form of motions, were made, at the close of all the evidence, to the admission of exhibits 6, 9, 10, 11, 12, 13, 14 and 15 as to each separately, but the motions were overruled. The court did not attempt to instruct the jury as to the specific competency or applicability of these several exhibits in evidence as between the two actions. The result was that the jury was permitted to apply this evidence in either or both of the actions.
We are of the opinion that the evidence warranted a finding that Lopresti’s hernia was caused by the accident and that the expense exhibits relating to a hernia expense were properly admitted. The competency of the remaining exhibits to which there was objection as evidence in the survival action depends upon whether there was any evidence in the record to support the proposition that the cancer which caused Lopresti’s death was in turn caused by the accident. Clearly, there was none, and the refusal to exclude such exhibits as evidence in the survival action was highly prejudicial to the defendant. State v. DeZeler, 230 Minn., 39, 41 N. W. (2d), 313, 15 A. L. R. (2d), 1137, 1147.
For the reasons given, the judgment is reversed, and, as to the survival action, the cause is remanded to the Common Pleas Court for further proceedings, and, as to the wrongful death action, final judgment is awarded defendant.
It will not be necessary for the court to pass upon other alleged errors.

Judgment accordingly.

Weygandt, C. J., Middleton, Taft, Zimmerman, Stewart and Lamneck, JJ., concur.